Ruffin, C. J.
 

 The tenant for life of a residue or of a sum of money can have the interest only ; for, in effect, he is the donee of an annuity measured by the interest. The solvency of one in the best credit now is so uncertain as to-any future time, especially through his life time, as not to-authorize his having in his hands, or his own credit, money which must go over to others at his death. The executor,, therefore, ought not to have paid the money part of the-estate to the daughter’s guardian, but ought to have required it to be invested under the direction of the Court for the benefit of all who, may be entitled from time to time. As the whole fund happens in this case to be together in the hands of a person, who was the guardian of both of the daughters, it can now be brought in, so that it may be invested in State bonds oí otherwise effectually secured. Of course, this is the rule in reference to the original capital only: for such part of the fund in the hands of the guardian ;as arose from suits, hires or interest of money, accrued-since the death of the testatrix, belongs absolutely to the two daughters! being in substance what was given to
 
 *196
 
 them. In taking the accounts, therefore, the capital and such profits must be distinguished.
 

 It is not precisely the same with respect to slaves. They have always been delivered to the legatee for life : because the right in remainder is not defeated, nor necessarily endangered'by his insolvency, as the specific thing goes over. But although'the tenant for life be thus entitled to the slaves 'specifically, it is the settled rule of the Court not to allow them to be
 
 removed
 
 beyond the jurisdiction. It can hardly be, that remaindermen and especially remote contingent re-maindermen should not have the value of their interests materially affected by carrying the slaves to remote places, when it must be highly inconvenient and expensive to follow, indentify, and reclaim them. It would put it in the power of the present holders to baffle those claiming after them, and reduce the value of their property in the slaves to almost nothing. Hence, when a tenant living here, has threatened to carry away slaves or to sell them to another with the view their removal, he has always been laidunder an injunction and bonds not to remove them and to have them forthcoming. There is in this case, indeed, no particular evil purpose in the defendant in the removal he intended, as we must take it from the answer, that his object is solely his own rightful enjoyment without any design to injure those entitled after him. Yet the Court must act upon general principles; and we cannot tell how far creditors of .the husband in Tennessee might lay hold of those slaves, and thereby the whole of them, at some future time, be scattered into different places and hands, from which the remaindermen might find it almost impossible to regain the possession or recover the value. The case, is therefore, one in which the plaintiffs are entitled to an'injunction, and also to have a receiver appointed to take the custody of the slaves and hire' them out, paying the hires to the person entitled for the time being, unless the defendant will enter
 
 *197
 
 into proper bonds not to remove the skives from this State ■ and to produce them as may be required by the Court.
 

 Per Curiam. Decree accordingly.